Dr. Curt **BAMBERGER**, Appellant,

v.

Ramsey **CLARK**, Attorney General of the United States, Appellee.

No. 20991.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 14, 1967.

Decided Jan. 30, 1968.

As Amended on Denial of Rehearing March 8, 1968.

Mr. Joseph H. Sharlitt, Washington, D. C., with whom Mr. Steven R. Rivkin, Washington, D. C., was on the brief, for appellant.

Mr. Bruno A. Ristau, Attorney, Department of Justice, with whom Asst. Atty. Gen. Edwin L. Weisl, Jr., Messrs. David G. Bress, U. S. Atty., and Morton Hollander, Attorney, Department of Justice, were on the brief, for appellee.

Before BURGER, WRIGHT and LEVENTHAL, Circuit Judges.

PER CURIAM:

This is an appeal from a summary judgment for the Alien Property Custodian in an action brought by appellant in the District Court to review an allegedly inadequate award made pursuant to Section 34 of the Trading with the Enemy Act.[1] The relevant facts are simply stated and undisputed. Appellant was an employee of I. G. Farbenindustrie Aktiengesellschaft (Farben) in Germany from 1931 until 1939 under an employment contract which contained, in addition to terms covering salary and other compensation, a provision by which appellant promised not to compete with Farben for two years after his employment ceased. The covenant not to compete was world-wide in application.

In the Spring of 1939, as Nazi atrocities mounted, appellant, a Jew, was compelled to flee Germany. Even before his escape, Farben had excluded appellant from his working facilities and had notified him (as required by the contract of

1. 50 U.S.C.App. § 34 (1964).

employment) that he would be discharged on October 31, 1939. In the notice of termination and subsequent correspondence, Farben insisted that appellant abide by his contractual obligation to refrain from competitive employment.

After months of temporary refuge in Belgium and France, appellant set out for the United States where he arrived in mid-September 1941, during the period set forth in his contract with Farben as including a continuing obligation, on the part of appellant, under the covenant not to compete with Farben. In March of 1942 the United States Government seized Farben's American assets and assumed its debts. On September 1, 1943, appellant made timely application to the Alien Property Custodian for payment of monies which appellant alleged were owing to him by Farben for breach of the employment contract in wrongful failure to pay sums due thereunder. Processing of appellant's application awaited his naturalization in 1947, and a final decision by the agency was not forthcoming until 1965. The Alien Property Custodian determined that, as of 1942 (the date when the United States stepped into Farben's shoes), Farben owed appellant 160,637.92 reichsmarks under the various provisions of the contract.[2]

Although agreement has been reached that Farben owed appellant 160,637.92 reichsmarks, sharp disagreement arises over the amount of dollars into which this foreign (and now defunct) currency should be translated. The Government, relying on Die Deutsche Bank Filiale Nurnberg v. Humphrey, 272 U.S. 517, 47 S.Ct. 166, 71 L.Ed. 383 (1926), contends that the correct conversion rate from reichsmarks to dollars is the prevailing rate on the date of final judgment (1965), and that appellant is entitled to

$7,824.04. Appellant argues, *inter alia*, that the correct conversion date, under the doctrine of Hicks v. Guinness, 269 U.S. 71, 46 S.Ct. 46, 70 L.Ed. 168 (1925), is the date of breach (1941), and that he is entitled to $172,055.09.[3]

Although numerous alternative theories are pressed upon us by appellant, we need consider only one. Accepting the Government's position that the critical question under Die Deutsche Bank Filiale Nurnberg v. Humphrey and Hicks v. Guinness is where the payment under the breached contract was to be made, and that the answer to this question is to be found by resort to German law appellant argues that under German law Farben was obliged to pay him in the United States as of the crucial date in September 1941. Appellee contends that German law designated Germany as the sole place of payment.

In this aspect the case turns on the meaning and interrelation of two provisions of the German Civil Code. Section 269 provides that where a contract does not provide for the place of performance, either expressly or by implication, the creditor shall render performance at the place where the debtor resided at the time the obligation arose. Section 242 provides that the debtor is obliged to effect his performance as required by good faith with reference to the customs of social intercourse.

Appellee apparently adopts the conclusions of its witness at the hearing, an expert on German law, whose opinion may be summarized as follows: (1) Appellant's employment contract did not stipulate the place of performance expressly, and it was not inferable from the circumstances, hence Section 269 fixed the place of performance in Germany;[4] (2) Section 242 cannot be in-

---

2. Since the employment contract was nonseverable we do not consider it significant that of this amount, 18,000.00 reichsmarks was to compensate appellant for honoring the covenant not to compete.

3. The large difference in exchange rates is due in part to the 1948 German Currency Reform Law, published in 13 Fed. Reg. 4971 (August 26, 1948), by which

the currency of Germany was converted from reichsmarks to deutsche marks and devalued. See Eisner v. United States, 117 F.Supp. 197, 127 Ct.Cl. 323 (1954); Reissner v. Rogers, 107 U.S. App.D.C. 260, 276 F.2d 506 (1960), cert. denied, 364 U.S. 816, 81 S.Ct. 47, 5 L.Ed.2d 47 (1961).

4. J.A. 79.

voked, as appellant contends, to alter the place of performance.[5]

■■ Under rules now applicable a question of foreign law is treated in the Federal courts as calling for a ruling on a question of law rather than fact.[6] That rule does not necessarily dispose of cases that arise in the context of an administrative record, since in some instances at least a court will defer to an agency's view of a question of law even though the court itself would not have decided the question the same way if it had considered the matter in the first instance —assuming of course that the agency's view is not unreasonable or contrary to the plainly ascertainable intent of the legislature.[7]

■ The doctrine of deference to the rulings of an administrative or executive agency, department or official has broadest scope when the legal question is one involving the meaning of a statute continually applied and interpreted by the executive branch. But it also has application to other issues, and certainly we would agree that in ascertaining the foreign law we pay careful attention to the expert testimony adduced at the agency hearing, and to the agency's view.

In this case, however, we are dealing with questions of a kind customarily entrusted to courts, and which may be disposed of without fear of clogging the wheels of the executive process. Indeed, as we understand the state of the administrative docket, the issue before us will not arise in any other case.

The opinion of the expert, adopted by the agency, rested on an underlying view that the parties were not contingently required to perform certain obligations outside of Germany. However, since the expert relied on the contract itself we do not believe she could disregard the contract provision obligating appellant not to compete with Farben even if he resided outside Germany. By compulsion of circumstances he came to reside in the United States, and since Farben was taking the view that the contract governed what appellant could do with his time in the United States we do not see how Farben could resist the employee's request that it perform its obligations in the United States. This view is underscored by Section 242 of the German Civil Code. Appellee's expert conceded that Section 242 "has been interpreted to mean that performance cannot be demanded of the debtor if conditions have changed to such an extent that the demand would contravene good faith, and also that the creditor can demand a performance which corresponds to the changed circumstances if good faith and ordinary usage so require."[8] However, she concluded that, although the provision was intended to invest the German courts with broad equity powers and although the provision on its face would seem to apply to relieve a Jew from the necessity of returning to Nazi Germany to collect his rightful compensation, Section 242 did not apply because no German case could be found which invoked the provision to alter the place of performance.

■ It seems strange to hear this argument asserted with respect to a foreign jurisprudence that is traditionally said to focus on statutory language rather than decisional precedent. Even in precedent-oriented Anglo-American law, the lack of a precedent doing something is hardly a precedent that it may not lawfully be done. Looking to the language and apparent purpose of Section 242 of the German Code, it seems probable that this equity provision, under these compelling circumstances, relieved appellant of the

---

5. J.A. 72.

6. FED.R.CIV.P. 44(a) (1). Although the Federal Rule became effective after this action was begun, we believe that the application of it would not work an injustice. Amendments to Rules of Civil Procedure, 383 U.S. 1031 (1966).

7. See, e. g., United Steelworkers of America v. NLRB, 126 U.S.App.D.C. 215, 376 F.2d 770 (1967); Philadelphia Television Broadcasting Co. v. FCC, 123 U.S.App. D.C. 298, 299–300, 359 F.2d 282, 283–284 (1966).

8. J.A. 72.

necessity of returning to the land he was forced to flee to collect what was his due.

In the absence of a German precedent flatly asserting that Section 242 is inapplicable, we will not assume that its inapplicability is inherent in the law of Germany—interpreted fairly in accordance with the intention of the Code. Nor will we be diverted by the speculative but possibly realistic assessment that a different result might have been announced if this question had been presented to a court in Germany while that unhappy land was under the sway of a regime that essentially flouted rather than implemented the rule of law.

From the foregoing conclusion it follows under Hicks v. Guinness, *supra*, that the reichsmarks debt was to be converted into dollars at a 1941 rate of exchange.

The cause is reversed and remanded to the District Court for disposition in accord with this opinion.

So ordered.