**MILENA SHIP MANAGEMENT CO., et al.**

v.

**R. Richard NEWCOMB, et al.**

**Civ. A. No. 92–2535.**

United States District Court, E.D. Louisiana.

Sept. 28, 1992.

See also, 804 F.Supp. 846, 804 F.Supp. 855.

John Harold Clegg, Douglas L. Grundmeyer, Daphne P. McNutt, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for plaintiffs.

Nancy Ann Nungesser, U.S. Attorney's Office, New Orleans, La., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

The plaintiffs move for summary judgment in the form of declaratory relief and a permanent injunction in an action to review a governmental administrative order blocking the plaintiffs' ships as assets controlled or owned by the Yugoslavian government. For the reasons that follow, the motion is DENIED. The facts have twice been stated in other written opinions, and need not be repeated here.

### I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "if the evidence is merely colorable, or is not significantly probative," then summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted).

### A.

The standards for summary judgment are not the only ones having an im-

pact on this case.[1] The plaintiffs in this action are challenging the decisions of an administrative agency of the United States government. This Court's scope of review under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*, of an administrative agency's decision is very narrow indeed. That decision, in fact, must be sustained unless the Court finds that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See Department of Banking and Consumer Finance v. Clarke*, 809 F.2d 266, 271 (5 Cir.1987), *citing Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). Inherent in the standard is a high degree of deference to the agency's decision, bordering on a presumption that the action taken is valid. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971); *American Financial Services v. F.T.C.*, 767 F.2d 957, 985 (D.C.Cir.1985). When reviewing an agency's decision, the Court may neither substitute its judgment for that of the agency, *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824, nor "weigh alternatives available to an agency and then determine which is more reasonable[.]" *Soler v. G. & U., Inc.*, 833 F.2d 1104, 1107 (2 Cir.1987) *cert. denied*, 488 U.S. 832, 109 S.Ct. 88, 102 L.Ed.2d 64 (1988). In fact, even if this Court disagrees with the agency's decision, the judicial role is relegated to affirming the agency's decision so long as a rational basis is presented for the decision reached. *See United Neighbors Civic Ass'n of Jamaica v. Pierce*, 563 F.Supp. 200, 205 (E.D.N.Y. 1983) *citing Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 290, 95 S.Ct. 438, 444, 42 L.Ed.2d 447 (1974). And so, in this setting,

summary judgment criteria are informed by these clear instructions regarding review of agency actions.

The Fifth Circuit has held that the determination as to whether an agency's factual findings are arbitrary and capricious "must be made on the basis of the administrative record." *Dep't of Banking and Consumer Finance*, 809 F.2d at 271, *citing Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). In this case, two decisions are at the core of the administrative record: the June 19 decision by OFAC to block these vessels and the more recent decision of September 18 denying the plaintiffs petition to unblock the vessels.[2] Judicial review "is to be based on the full administrative record that was before the [administrative officer] ... at the time he made his decision." *Overton Park*, 401 U.S. at 420, 91 S.Ct. at 825. If this record is inadequate or incomplete in some respect, this Court can "obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." *Camp v. Pitts*, 411 U.S. at 142, 93 S.Ct. at 1244. The record in this case is extensive and impressive. It has been given exacting scrutiny by this Court. And it is a role model of completeness and high-minded scholarship.

## II.

### A.

The administrative record is essentially the evidentiary basis on which the agency makes its decision. In this case, the record shows that the plaintiffs have had several opportunities to plead their case to OFAC since the June 19 order blocking the vessels. Both Captain Samardzic, the manag-

---

1. The plaintiffs' claim that the determination of what is a foreign entity is governed by the Foreign Sovereign Immunities Act, 28 U.S.C. 1602, is incorrect. OFAC's involvement in this event is based not on the FSIA but rather on the International Emergency Economic Powers Act. The FSIA is intended to govern claims of immunity by foreign states when sued in federal court. It is not applicable to actions authorized by IEEPA. *See Chas. T. Main Intern., Inc., v. Khuzestan Water & Power Authority*, 651 F.2d

800 (1 Cir.1981) (FSIA not intended to eradicate executive branch flexibility under IEEPA in an international crisis).

2. The plaintiffs suggest that the final reviewable agency decision was the initial one to block the vessels. It appears that this assertion was made without receipt or knowledge of the September 18 denial of the request to unblock.

ing director of Milena, and plaintiffs' counsel have actively pursued the unblocking of the vessels. OFAC had access to statements by three of plaintiffs' experts on Yugoslavian law, as well as an article on privatization in Yugoslavia written under the auspices of the United Nations.[3] Additionally, OFAC was provided with copies of the plaintiffs' articles of incorporation, documents relating to the registration of the vessels in Malta, and documents relating to bank accounts and insurance held by the plaintiffs. Judging from the correspondence in the record, it is evident that representatives of the plaintiffs and defendants have held meetings and had many telephone conversations. And, of course, the preliminary injunction hearing held by this Court provided OFAC with yet another opportunity to consider the plaintiffs' arguments and evidence, in particular the testimony of Captain Samardzic. Nothing suggests that OFAC has declined to accept any submissions from the plaintiffs; and although they accuse OFAC of intentional delay, plaintiffs have not presented any proof that the record is, in any respect, fatally incomplete.[4] A review of the record betrays such a suggestion.

■ But to say that the record is complete does not end this Court's analysis. The Court must determine whether the agency decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. 706(2)(A). To do this, this Court must inquire into the factual basis for the decision and determine whether a clear error of judgment has occurred or whether the agency misapplied or misinterpreted the law. In this case, the Court finds that

OFAC's decisions to block the vessels and then to deny the plaintiffs' petition for an unblocking were well within the bounds of reasonableness under the circumstances and thus do not constitute a reversible administrative determination.

### B.

OFAC's September 18 Agency Decision denying the plaintiffs' petition to unblock the vessels is, in many respects, the culmination of OFAC's involvement in this matter, and thus provides the best summary of OFAC's justifications for the blocking. In that decision, OFAC suggests three bases for its denial of the plaintiffs' petition to unblock the vessels: first, the August 22 U.N. Sanctions Committee ruling; second, OFAC's interpretation of Yugoslavian law; and finally, JOP's status under that law.

■ The initial reason for OFAC's denial of the petition to unblock the vessels is that the UN Sanctions Committee issued a ruling that stated the "continued operation and associated transfers of funds or resources to the owners of four ships controlled and managed by the Milena Ship Management Company of Malta ... would be in violation of the sanctions established under resolution 757."[5] Resolution 757 is clear. It animates the President's orders. OFAC interprets this ruling to mean "that the release of the vessels would constitute a prohibited transfer of an economic resource both to the Government of Yugoslavia and a 'person' within Yugoslavia, namely, JOP."[6] That does not seem to this Court to be an unreasonable interpretation of U.N. expression. Neither the

**3.** B. Vukmir, "Privatization in Yugoslavia," U.N. Center for Transnational Corporations, September 20, 1990. Ironically, or perhaps predictably, both sides seek the shelter of this article in making their arguments to this Court.

**4.** The plaintiffs' claims of delay seem unfounded. The plaintiffs' last submission to OFAC occurred just two weeks before the Agency Decision was announced on September 18. Perhaps had OFAC acted any faster, the plaintiffs would be claiming now that defendants had acted too hastily.

**5.** See Agency Decision, Office of Foreign Assets Control, September 18, 1992 Enclosure 1.

The relevant portion of Resolution 757 reads:

[a]ll States shall not make available to the authorities in the Federal Republic of Yugoslavia (Serbia and Montenegro) or to any commercial ... undertaking in the Federal Republic of Yugoslavia (Serbia and Montenegro), any funds or any other financial or economic resources and shall prevent their nationals and any persons within their territories from removing from their territories or otherwise making available to those authorities or to any such undertaking any such funds or resources.

**6.** Agency Decision September 18, 1992 p 3–4.

government nor this Court, however, seems legally bound by an opinion of the U.N. Sanctions Committee; such opinions are, nevertheless, advisory and provide the legal norm for the President's orders. *See e.g., Committee of U.S. Citizens in Nicaragua v. Reagan,* 859 F.2d 929 (D.C.Cir. 1988); *Diggs v. Shultz,* 470 F.2d 461 (D.C.Cir.1972). But in the final analysis, the only laws that could cause the blocking of the vessels are Executive Order 12808 and 12810, not the U.N. resolutions.

Next, OFAC's Agency Decision is anchored to its interpretation of Yugoslavian law. That it is a matter of interpreting law instead of findings facts shifts somewhat the parameters of judicial review. The plaintiffs assert that because OFAC has interpreted Yugoslavian law, plaintiffs are entitled to a *de novo* review of OFAC's conclusions under Fed.R.Civ.P. 44.1. It is the defendants' contention, invoking *Bamberger v. Clark,* 390 F.2d 485, 488 (D.C.Cir. 1968), that as long as OFAC's interpretation is not "unreasonable or contrary to the plainly ascertainable intent" of the Yugoslavian legislature, this Court should defer to OFAC's decision and not conduct its own inquiry. While the court in *Bamberger* in fact overturned an agency's ruling on a question of German law, the lasting legacy of the case is the court's acknowledgement that deference to the agency's interpretation of foreign law can be appropriate. *See Nouve Industrie Elettriche di Legnano v. United States,* 739 F.Supp. 1567, 1571–72 (CIT 1990); *Merck & Co. v. U.S. International Trade Commission,* 774 F.2d 483, 488 (Fed.Cir.1985).

■ It is this Court's opinion that deference to OFAC's interpretation of Yugoslavian law is particularly appropriate in this instance (although the Court has reviewed the law too, and cannot disagree with OFAC's conclusions). Plaintiffs had a full opportunity to submit evidence and did submit statements by three people on Yugoslavian law that were considered and even incorporated into OFAC's decision. After reviewing the affidavits as well as the article by Dr. Branko Vukmir, a legal advisor to the United Nations, OFAC concluded that the current system in Yugo-slavia, in particular the concept of "social capital," gives rise to a residual government claim to the majority of a Yugoslav enterprise's capital. This Court is inclined to defer to OFAC's interpretation not only because the plaintiffs had the opportunity to submit expert evidence on the question of Yugoslavian law, but also because upon review of these materials, the Court agrees with the agency's characterization of the situation in Yugoslavia. Short of a complete privatization of a Yugoslavian enterprise, it appears that the government of Yugoslavia would retain an important interest in the enterprise. The idea of social capital as opposed to internal (personal) shares, the role of government in deciding the extent personal or internal shares can be issued in a relation to social capital, the overriding presence of governmental development funds, all are counterintuitive to plaintiffs' protestations about Yugoslavian law. It is also instructive to recall how inconclusive plaintiff's presentation on this very issue was at the preliminary injunction hearing.

## C.

As a final matter, this Court has reviewed OFAC's interpretation of the facts which lead it to believe that JOP is, in fact, owned or controlled by the Yugoslavian government. These include the fact that the ruling Socialist party permeates the decisionmaking apparatus of the economy as well as the government; the State's control, as representative of society, of the ultimate disposition of an enterprise's social capital; the government's statutory interest in social capital; the fact that there are no specific figures on the status of the JOP privatization and plaintiffs have not offered any evidence that the social capital is less than a majority; the evasive testimony of Captain Samardzic at the preliminary injunction hearing as to the government's claim if liquidation were to occur; the incomplete testimony of Mr. Ives; and the fact that Captain Samardzic, the Managing Director of both JOP and Milena, has had a long and distinguished career in the Yugo-

slavian government as both Foreign Minister from Montenegro and as a representative of the Yugoslav Chamber of Economy, a government-controlled agency. The Court is more than satisfied on the basis of the present record that the defendants' interpretation of the facts was neither arbitrary nor capricious.

For the reasons stated the plaintiffs have failed to carry their burden under Rule 56 and their motion for summary judgment in the form of declaratory relief and a permanent injunction is hereby DENIED.