United States Court of Appeals,

Fifth Circuit.

No. 92-3905.

MILENA SHIP MANAGEMENT COMPANY, et al., Plaintiffs-Appellants,

v.

R. Richard NEWCOMB, Director, Office of Foreign Assets Control of the Department of the Treasury, et al., Defendants-Appellees.

July 21, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before SMITH, DUHÉ and WIENER, Circuit Judges.

WIENER, Circuit Judge.

Plaintiff-Appellant Milena Ship Management Company, Ltd. (Milena) appeals the district court's grant of summary judgment in favor of Defendants-Appellees, the Office of Foreign Assets Control (OFAC) of the Department of the United States Treasury, and the United States Customs Service (collectively, the government). Milena challenges the blocking of four of its vessels pursuant to two Executive Orders and the denial of its petition to unblock the ships. As we find no reversible error in the district court's rulings, we affirm.

I

FACTS AND PROCEEDINGS

The International Emergency Economic Powers Act (IEEPA)[1] grants the President authority to regulate or prohibit international economic transactions in case of a national emergency "which has its source in whole or substantial part outside the United States."[2] Included in this authority is the power to prevent "transactions involving[ ] any property in which any foreign country or a national thereof has any interest[ ] by any person, or with respect to any property, subject to the jurisdiction

---

[1]50 U.S.C. §§ 1701-1706.

[2]*Id.* § 1701(a).

of the United States."[3]  Another Act of Congress, the United Nations Participation Act (UNPA)[4] authorizes the President to implement measures adopted by the U.N. Security Council pursuant to Article 41 of the U.N. Charter.

Operating under the authority of these two statutes, then President Bush issued two executive orders in reaction to growing civil unrest in former Yugoslavia.  Both orders, Executive Orders 12808 and 12810, impose U.N. mandated economic sanctions against the unrecognized Federal Republic of Yugoslavia (FRY or Yugoslavia), consisting of the provinces of Serbia and Montenegro. Executive Order 12808 blocks "all property and interests in property in the name of the Government of Yugoslavia, that hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons."  Executive Order 12810 reiterates this restriction and additionally prohibits all imports to the United States from the FRY and all exports from the United States to the FRY.

These Executive Orders also direct the Secretary of the Treasury (Secretary) to promulgate regulations necessary to "block" all property in which the FRY has an interest.  On that authority, OFAC immediately issued General Notice No. 1, stating that all entities located or organized in the FRY are presumed to be owned or controlled by the Yugoslavian government.  This presumption was based on the history of that government's involvement in business corporations and other enterprises, and its residual interest in those companies.  Included in this category was Jugosloanska Oceanska Plovidba (JOP), a commercial shipping company headquartered in Kotor, Montenegro.  Under OFAC's order, foreign subsidiaries of Yugoslavian companies are also presumed to be owned or controlled by the Yugoslavian government.

In the course of implementing the Executive Orders, United States Customs agents detained four vessels owned and operated by various JOP subsidiaries—the M/V ZETA and the M/V MOSLAVINA in the port of New Orleans, the M/V DURMITOR in Baltimore, and the M/V

---

[3]*Id.* § 1702(a)(1)(B).

[4]22 U.S.C. § 287(c).

MARTINOVIC in Savannah.[5] Milena, which manages and operates all four vessels, denies that JOP is connected with the FRY government. Accordingly, Milena applied to OFAC for an order unblocking JOP's frozen assets. While this application was pending before OFAC, Milena sought declaratory and injunctive relief in the District Court for the Eastern District of Louisiana. That court denied the request, finding that a preliminary injunction would not serve the public interest.

Subsequently, OFAC denied Milena's petition to unblock the vessel, citing three bases for that decision. First, OFAC cited the U.N. Sanctions Committee ruling that the "continued operation and associated transfers of funds or resources to the owners of four ships controlled and managed by the Milena Ship Management Company of Malta ... would be in violation of the sanctions established under [Security Council] Resolution 757." OFAC interpreted this language as meaning "that the release of the vessels would constitute a prohibited transfer of an economic resource of both the Government of [the FRY] and a "person' within [that country], namely, JOP."

Second, OFAC interpreted the law of the FRY, considering affidavits and articles submitted by various experts. According to the affidavit of Dr. Branko Vukmir, a legal advisor to the U.N., the government of the FRY retains an interest in business enterprises by virtue of the system of "social capital" as opposed to internal (personal) shares. In addition, the government determines and limits the issuance of internal shares and has established a governmental fund to receive the proceeds from the sale of the "social capital." Finally, OFAC concluded that the interest retained by the government under this system justified the conclusion that all Yugoslavian vessels were owned by the government.

Soon afterwards, Milena again filed a motion in the district court, this one being for declaratory and injunctive relief by way of a Motion for Summary Judgment, arguing that OFAC erred in denying Milena's application to have the vessels unblocked. Milena also sought appointment of a custodian to maintain the blocked vessels. Reviewing OFAC's order, the district court agreed with OFAC's interpretation of Yugoslavian law that led OFAC to conclude that JOP is in fact owned or controlled by the Yugoslavian government. In addition, the district court reviewed and accepted

---

[5]Ownership of the blocked vessels was transferred to companies in Malta prior to the issuance of the Executive Orders. Thus, the vessels fly the Maltese flag, even though the companies in Malta are still owned by JOP.

OFAC's factual findings regarding the Yugoslavian government's control over the economy in general and an enterprise's social capital specifically.  Consequently, the district court denied the motion for summary judgment.  804 F.Supp. 859.

Ultimately, the district court granted summary judgment in favor of the government, dismissing Milena's claim.  Milena timely appealed from this decision.

II

DISCUSSION

A. *Standard of Review*

We review the district court's decision de novo, but review the agency's decision, as did the district court, with the appropriate deference.  We will set aside agency action if we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[6]  In reviewing an agency action, we inquire whether the agency acted within its authority, adequately considered all the relevant factors, and provided a reasoned basis for its decision.[7]  Furthermore, we give special deference to an agency's interpretation of an order it is charged to administer.[8]  Finally, we base our review of an administrative action "on the full administrative record that was before the [administrative officer] ... at the time he made his decision."[9]

B. *OFAC's Presumption*

Milena first challenges OFAC's initial presumption that the Yugoslavian government has a proprietary interest in all vessels owned by Yugoslavian companies.  Milena stresses that at the time OFAC made this decision it did not possess the Vukmir article, one which plaintiffs themselves later supplied to OFAC.  Consequently, Milena insists that OFAC had no basis for the decision and therefore acted arbitrarily and capriciously.  The government responds that the presumption does not

---

[6]Administrative Procedure Act, 5 U.S.C. § 706(2)(a).

[7]*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415-16, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971).

[8]*United States v. New Orleans Pub. Serv., Inc.,* 553 F.2d 459 (5th Cir.1977), *cert. granted and vacated on other grounds,* 436 U.S. 942, 98 S.Ct. 2841, 56 L.Ed.2d 783 (1978).

[9]*Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825.

constitute a final agency action and is therefore not reviewable. According to the government, the only final and reviewable agency action is OFAC's refusal to unblock the vessels.

The district court rejected the government's argument regarding finality in its denial of a preliminary injunction. The court correctly noted that agency action is final when it results in "the imposition of an obligation, the denial of a right, or the fixing of a legal relationship."[10] The court held that the presumption as applied to JOP "clearly imposes obligations (the burdens associated with the blocking), denies rights (the plaintiff's rights to freely use and transfer and deal with their property) and fixes a legal relationship (the relationship between the plaintiffs as the targets of a blocking order and the United States as the issuer of the blocking order)." We agree.

Having concluded that the district court was correct in its conclusion that the initial presumption as applied to JOP was a final agency decision, we review the reasonableness of that decision. Here, again, Milena emphasizes that OFAC did not have access to the Vukmir article when it made its decision. Even without the Vukmir article, however, OFAC acted reasonably in issuing the presumption of government ownership. OFAC had to act quickly following the issuance of the Executive Orders; delay would have allowed the assets to leave the United States, thereby thwarting the purpose of the Orders. OFAC assumed, based on its knowledge of governmental involvement in business enterprises under the recently ended communist regime, that there were still vestiges of pervasive government ownership and control in the present system. This presumption is supported by the venerable legal maxim that a known condition is presumed to continue in existence until there is evidence to the contrary. Given the general confusion surrounding the fall of communist regimes in eastern Europe, and the indisputable fact that the existing socialist infrastructures are never dismantled and replaced with capitalism overnight, OFAC's presumption of state ownership and involvement was reasonable.

C. *OFAC's Refusal to Unblock the Vessels*

Milena next challenges OFAC denial of Milena's petition to unblock the vessels. The

---

[10]*United States Dep't of Justice v. Federal Labor Relations Authority,* 727 F.2d 481, 493 (5th Cir.1984).

cornerstone of OFAC's decision was its interpretation of Yugoslavian law, based on the Vukmir article and the current Yugoslavian law on privatization. Milena disputes OFAC's interpretation of that law and insists that OFAC's interpretation is subject to de novo review. The district court applied a deferential standard of review, yet recognized that OFAC's interpretation would also prevail under a de novo review. We again agree with the district court.

Even under the more stringent de novo review, OFAC's interpretation of Yugoslavian law is correct. The Vukmir article describes the Yugoslavian system as based on the concept of "social capital." As such, society has an interest in each business enterprise, albeit the exact nature of that interest is somewhat obscure. Although Milena stresses the difference between a societal interest and a state interest (as in other communist systems), there is little practical difference. As the Vukmir article makes clear, the trend towards privatization has created a dilemma: when a heretofore public business enterprise goes private (i.e., sells private shares), who or what receives the proceeds from the sale of society's interest? Under the 1990 law, the proceeds are placed in one or more funds controlled by the government.

In the instant case, JOP is not a private company. Therefore, "society"—through its representative, the government—still retains an interest in the enterprise. Should JOP go private, the government would receive a portion of the proceeds, placed in a government controlled fund. In light of the fact that the societal interest reverts to the government, we conclude that the Yugoslavian government retains an interest in JOP.

D. *Appointment of a Custodian for the Vessel*

Finally, Milena seeks a writ of mandamus compelling the government to appoint a custodian for the vessels and pay for their maintenance. Although the IEEPA is silent on the appointment of a custodian, its predecessor The Trading With The Enemy Act (TWEA)[11] did provide for the appointment of a custodian. Milena argues that the TWEA provides guidance for interpreting the IEEPA; therefore, because the TWEA provides for appointment of a custodian, Congress intended the same provision to apply under the IEEPA. This bit of legal legerdemain is wholly specious.

---

[11] 50 U.S.C.App. § 5.

Exhibit "A" for the proposition that if Congress had wanted to impose an obligation on the government to appoint a custodian, it knew how to say so directly. This is doubly true in the case of IEEPA, wherein Congress incorporated certain TWEA provisions and omitted others. Under these circumstances, Congress's omission of the custodian provision evidences a conscious intent not to assume that obligation.

In addition, were we to find that the government had a duty to appoint a custodian—or had a duty to reimburse Milena for maintenance—the effect would be to shift the costs of the blocking from the sanctioned nation to the United States. This obviously would run counter to the purpose of economic sanctions, which is to exert economic pressure on the offending government, not to mitigate it.

III

CONCLUSION

In this appeal of an administrative agency's decision to block vessels owned by the Yugoslavian government pursuant to two Executive Orders, Milena, as operator of the vessels, challenges the reasonableness of the agency's decision. The agency's initial presumption that the all vessels owned by Yugoslavian companies were subject to blocking was reasonable given the need to act quickly and the general knowledge that, under the communist system, the government had a proprietary interest in all business enterprises. Moreover, in view of this system, in which the government retains an interest in business enterprises in the form of "social capital," the agency's refusal to unblock the vessels was reasonable. Finally, there is no statutory basis for Milena's claim that the government is obligated to appoint a custodian for the vessels. To the contrary, the omission by Congress of such provision when it adopted the IEEPA was clearly deliberate, following as it did on the heels of the predecessor act, the TWEA, which contained such a provision.

For the foregoing reasons, the decision of the district court is

AFFIRMED.