## THE PROCTOR & GAMBLE CELLULOSE COMPANY, Plaintiff,

v.

## VISKOZA–LOZNICA, Progres, Progres-viskoza, Investbanka Beograd, and Beogradska Banka Dd, New York Agency, Defendants.

### No. 95–2291–TUBRE.

United States District Court, W.D. Tennessee, Western Division.

Oct. 27, 1998.

Maurice Wexler, Baker, Donelson, Bearman & Caldwell, Memphis, TN, John Vanderstar, Maneesha Mithal, Covington & Burling, Washington, DC, for Proctor & Gamble Cellulose Company, plaintiff.

Joseph M. Rogers, Hale Fogleman & Rogers, West Memphis, AR, Deyan, Ranko, Brashich, Law Office of Deyan Ranko Brashich, New York City, for Viskoza–Loznica, Progres, Progres–Viskoza, Investbanka Beograd, defendants.

ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND MOTION FOR SUMMARY JUDGMENT, AND PLAINTIFF'S MOTION TO STRIKE

TURNER, District Judge.

Plaintiff Procter & Gamble Cellulose Company brought this action against defendants Viskoza–Loznica, Progres, and Progres–Viskoza (collectively "the Progres defendants") alleging breach of contract in the failure to pay for delivered goods. Procter & Gamble's complaint also named Investbanka Beograd and Beogradska Banka DD, New York Agency as defendants alleging a separate breach of contract in their refusal to honor several letters of credit. On April 24, 1997, Beogradska Banka DD, New York Agency, was dismissed by order of this court.

The Progres defendants and Investbanka have each filed a motion to dismiss alleging lack of subject matter and personal jurisdiction, insufficient process and insufficient service of process. Investbanka has also filed a motion for summary judgment. Plaintiff has filed a motion to strike motions filed by the defendants. These motions are presently before the court.

## I. *Background*

Procter & Gamble Cellulose Company is a Delaware corporation with its principal place of business in Memphis, Tennessee. At all times relevant to this suit, Procter & Gamble was a manufacturer of wood pulp.

Procter & Gamble had a thirty year business relationship with the Progres defendants, all of which are located in what is now the Federal Republic of Yugoslavia, which consists of Serbia and Montenegro (hereinafter Yugoslavia or the Yugoslav state). During that time, Procter & Gamble negotiated many sales of wood pulp to the Progres defendants, which Procter & Gamble exported to Yugoslavia. Procter & Gamble alleges that Progres and Progres–Viskoza were government-owned purchasing agents which were responsible for placing wood pulp orders with Procter & Gamble and remitting payment. Procter & Gamble further alleges that Progres and Progres–Viskoza paid for the wood pulp by obtaining letters of credit in favor of Procter & Gamble, payable in Memphis, Tennessee. According to Procter & Gamble, Viskoza–Loznica was the ultimate user of the wood pulp.

Between April 20, 1991, and May 18, 1992, Procter & Gamble exported sixteen shipments of wood pulp to Progres–Viskoza at a price of $3,859,465. Of this amount, $1,156,-966.70 was allegedly to be paid by five separate letters of credit issued by Investbanka and confirmed by Beogradska Banka. To date, Procter & Gamble has not been paid any portion of the $3,859,465.

The primary reason for the interruption in the parties' business relationship was the United States government's reaction to various aggressions occurring within Yugoslavia. On May 30, 1992, President Clinton issued Executive Order 12808 which froze assets held in the name of the Yugoslav state. Pursuant to this Executive Order, and the subsequent Executive Order 12810, in July of 1992 the Office of Foreign Assets Control ("OFAC") established a list of entities organized or located in Yugoslavia that it presumed were agencies or instrumentalities of Yugoslavia. Investbanka, Progres, and Viskoza–Loznica (but not Progres–Viskoza) were on the OFAC list. As a result, United States citizens were prohibited from transacting business with those defendants, unless the transactions were licensed by OFAC. In addition, any assets of those defendants within the jurisdiction of the United States were frozen. The parties dispute what effect this policy had on the defendants' ability to make payments to Procter & Gamble.

## II. *Motions to Dismiss*

### A. *Subject Matter Jurisdiction*

▮▮ Procter & Gamble avers that this court has subject matter jurisdiction over all the defendants under both 28 U.S.C. § 1330 (Foreign Sovereign Immunities Act "FSIA") and 28 U.S.C. § 1332 (diversity).[1] The requirements for personal jurisdiction, process, and service of process are somewhat more stringent if jurisdiction is based on diversity.[2]

▮▮ All the defendants concede that this court has subject matter jurisdiction based on diversity. Both Investbanka and the Progres defendants have brought motions under Rule 12(b)(1) of the Federal Rules of Civil Procedure, however, challenging Procter & Gamble's assertion that this court has subject matter jurisdiction under the FSIA. 28 U.S.C. § 1330 provides:

(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which

---

1. The FSIA provides exclusive jurisdiction over foreign states and their instrumentalities. *In re Air Crash Disaster Near Roselawn, Ind.,* 96 F.3d 932, 936 (7th Cir.1996); *Gates v. Victor Fine Foods,* 54 F.3d 1457, 1459 (9th Cir.1995). Thus, jurisdiction can be based on either diversity or the FSIA, but not both.

2. If jurisdiction is invoked under 28 U.S.C. § 1330(a), § 1330(b) automatically gives the

court personal jurisdiction over the party if service is made in accordance with 28 U.S.C. § 1608. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 485 n. 5, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). If jurisdiction is invoked under 28 U.S.C. § 1332, personal jurisdiction must satisfy due process and the Tennessee long-arm statute, and process and service of process must comply with the Federal Rules of Civil Procedure.

the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

A "determination of whether a party is subject to the court's jurisdiction under 28 U.S.C. § 1330 should be based upon a party's status at the time the act complained of occurred." *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 450 (6th Cir.1988). All of the defendants contend they were not foreign states as defined in 28 U.S.C. § 1603(a) at the time of the acts complained of, thereby precluding jurisdiction based on 28 U.S.C. § 1330.

28 U.S.C. § 1603(a), which defines "foreign state" for purposes of 28 U.S.C. § 1330, provides:

(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

The parties dispute whether the defendants were agencies or instrumentalities of a foreign state, as described in 28 U.S.C. § 1603(b), during the relevant period.

■ When a defendant raises lack of subject matter jurisdiction as a defense pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing the existence of the court's jurisdiction. *Rogers v. Stratton Indus., Inc.,* 798 F.2d 913, 915 (6th Cir. 1986). Furthermore, where defendants fac-

tually attack whether a court has subject matter jurisdiction as averred in a complaint, "no presumptive truthfulness applies to the [plaintiff's] factual allegations." *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990).[3] Instead, factual disputes should be decided by the court based on the evidence before it. *Id.*

Should facts critical to jurisdiction be in dispute, as ofttimes they are, the court must make appropriate inquiry, and must satisfy itself on authority to entertain the case. The court has considerable leeway in devising procedures in that direction, and may resort to written or live evidence submitted in connection with the motion. The nonmoving party must, however, be afforded an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.

*Rogers,* 798 F.2d at 918 (citation omitted). In the case at bar, there are several mixed questions of law and fact that this court must resolve. The parties have provided several briefs with supporting affidavits on these issues, leading the court to find the parties have been "afforded an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." Accordingly, the court finds it unnecessary to hold an evidentiary hearing. *See Ohio Nat'l Life,* 922 F.2d at 327 (finding district court has considerable discretion on whether to hold evidentiary hearing, especially where non-movant had ample opportunity to present evidence).

**1. *All Defendants—The OFAC List***

■ Procter & Gamble places heavy reliance on Progres, Viskoza–Loznica, and Investbanka's being placed on the list of "blocked entities" issued in July of 1992 by OFAC for purposes of alerting U.S. citizens to Yugoslav entities that they may not transact business with. Procter & Gamble asserts that the defendants' presence on this list conclusively establishes that they are agencies or instrumentalities of the government of Yugoslavia. This court disagrees.

**3.** If defendants merely questioned the facial sufficiency of the complaint this court would presume plaintiff's allegations were true, similar to

the Rule 12(b)(6) safeguard. *Id.* As will be shown, defendants' allegations go far beyond a mere facial challenge.

The OFAC list is a partial list of entities owned or *presumed* to be controlled by the Yugoslav state. One can infer from the list that OFAC does not make a determination whether each entity on its list is actually owned or controlled by the state. Instead, OFAC openly states on the list that it *presumes* that *all* entities located or organized within Yugoslavia are controlled by the state.[4]

OFAC presumes companies located or organized in Yugoslavia are agencies or instrumentalities of the state because of its understanding of the economic structure of Yugoslavia. OFAC has concluded that the current economic system in Yugoslavia, in particular the concept of social-ownership, provides the state with a residual claim on the majority of all Yugoslav entities' capital. *Milena Ship Management Co. v. Newcomb*, 804 F.Supp. 859, 863 (E.D.La.1992), *aff'd*, 995 F.2d 620 (5th Cir.1993).[5] According to to OFAC, any firm not yet privatized is therefore controlled by the government, since it operates with government controlled assets.[6] OFAC implicitly admits, however, that its presumptions do not always hold true because it allows companies on the list to show that they are not under government control or ownership, by becoming privatized or otherwise, thus removing themselves from the list.

■■■ The court must then address what degree of deference should be afforded OFAC's determinations. Typically, a court reviews an agency's determinations for arbitrariness, capriciousness or abuse of discretion. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). There are two reasons why this court will not give such deference to OFAC's determinations. First, OFAC has not made any specific findings with respect to any of the defendants at issue. Thus, there is no record of such a determination for this court to conduct the review required by *Chevron*. Second, OFAC's determinations were not made in the context of determining whether an entity is an agency or instrumentality of a foreign state for purposes of the FSIA. While it is true that an agency may be afforded some leeway in interpreting statutes where it has special expertise, *see, e.g., United States Dep't of Navy v. FLRA*, 840 F.2d 1131, 1134 (3d Cir.1988), OFAC has made no such inter-

4. This distinction is made slightly more apparent in the Department of the Treasury's later publication titled *Sanctions Against The Federal Republic of Yugoslavia (Serbia And Montenegro) A Summary of Executive Orders 12808, 12810, & 12831* (01/29/93). In this publication, Treasury provides a short, non-exclusive list of entities controlled by the Yugoslav state. None of the defendants are on this short list. That publication continues by noting that all other entities within Yugoslavia are presumed to be controlled by the state.

5. Procter & Gamble places heavy reliance on *Milena* for the proposition that this court should defer to OFAC's placing Investbanka, Progres, and Viskoza–Loznica on the list, and accept that placement as proof of the defendants' status as instrumentalities of the Yugoslav state. This contention is without merit for several reasons. In *Milena*, the court upheld OFAC's determination that a specific group of assets was controlled by the Yugoslav government. *Id.* at 862–64. The court did not merely defer to the agencies' conclusions, however, and instead noted that it reviewed the record with exacting scrutiny. *Id.* at 861. Thus, *Milena* did not merely "defer" to OFAC's determination.

Furthermore, the *Milena* court noted that the plaintiffs had numerous opportunities to plead their case to OFAC after an order blocking their

assets was issued. *Id.* at 861. The agency made several specific findings with respect to these claims and offered significant evidence that these specific assets should be blocked. *Id.* at 862–64. The court noted that the record before it was "extensive and impressive" and a "role model of completeness and high-minded scholarship." In the case at bar, OFAC has made no specific finding with respect to any of the defendants, and none of the defendants had an opportunity to contest their being placed on the list.

Moreover, the *Milena* court reviewed OFAC's decision under the arbitrary, capricious, or abuse of discretion standard. *Id.* at 863. There is no agency-developed record in the case at bar for this court to review under that standard. Instead, this court is determining de novo whether the defendants were agencies or instrumentalities of the Yugoslav state.

Accordingly, the court finds that *Milena* offers little support for Procter & Gamble's claim.

6. This statement was made by R. Richard Newcomb, Director of OFAC, in a Declaration in an unrelated case, a copy of which is attached to Plaintiff's Brief in Opposition to Motion to Dismiss as Exhibit 3.

pretation. This court is unprepared to assume that OFAC would apply the same standards in making a determination under the FSIA that it has applied in determining what entities are placed on the OFAC list.[7] Furthermore, 28 U.S.C. § 1330 rests the power to make a jurisdictional determination on the federal courts, not OFAC.

■ Nevertheless, all of OFAC's determinations are not without value. OFAC seems to make two assumptions: 1) that all enterprises in Yugoslavia are socially-owned, and 2) that all socially-owned entities in Yugoslavia are agencies or instrumentalities of the Yugoslav state. An entity can remove itself from the OFAC list by showing it has become privatized—that is, not socially-owned. Characterizing all entities within Yugoslavia as socially-owned seems, therefore, to be OFAC's broader assumption. Once an entity is specifically found to be socially-owned, it is difficult to imagine that OFAC could remove it from the list without seriously undermining its whole premise that social-ownership is the equivalent of state-control. If Procter & Gamble can show that an entity is socially-owned, OFAC's determination that all socially-owned entities are state agencies or instrumentalities because of the economic system in Yugoslavia will be afforded evidentiary weight. *See A.D. Belgrade v. Sidex Int'l Furniture Corp.,* 2 F.Supp.2d 407, 415 (S.D.N.Y.1998) (finding removal under FSIA was proper where defendant came forward with substantial evidence that socially-owned enterprises were owned by the Yugoslav state *and* that defendant was a socially-owned entity at the time of the events underlying the lawsuit). Accordingly, this court will disregard the defendants being included on the OFAC list unless Procter & Gamble shows that the defendant in question is socially-owned.

### 2. *Investbanka*

■ Investbanka's alleged issuance of five separate letters of credit in April and May of 1992 is the underlying act for purposes of determining the period of inquiry with respect to Investbanka's status as a foreign state. *See Gould,* 853 F.2d at 450. It is undisputed that Investbanka is and was during the relevant period a separate legal person organized under the laws of the Yugoslavia, thus satisfying the first and third requirements of 28 U.S.C. § 1603(b). The parties dispute whether Investbanka was an organ of the Yugoslav state or a subdivision thereof, and whether a majority of Investbanka's shares or other ownership interest was owned by the Yugoslav state or a subdivision thereof, one of which is necessary to meet the definition of "an agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b)(2).

■ The court finds that Procter & Gamble has failed to establish that the Yugoslav state or a subdivision thereof owned a majority of Investbanka. Procter & Gamble first points this court to Investbanka's presence on the OFAC list. As noted above, OFAC presumes all entities in Yugoslavia are socially-owned, and that the state has a large residual interest in all socially-owned entities. Procter & Gamble offers no evidence, other than Investbanka's being placed on the OFAC list, that Investbanka is or was a socially-owned company. On the other hand, Investbanka has provided a declaration pursuant to 28 U.S.C. § 1746 from its attorney which states that Investbanka lost its socially-owned status as of January 1, 1990, and became a joint stock company with several thousand private shareholders.[8] Based on this evidence, the court finds Procter & Gamble has failed to carry its burden of establishing that Investbanka was a socially-owned enterprise that might support a finding that

---

7. *Milena* recognized that a determination that an entity should be placed on the OFAC list might not be the equivalent of a determination that an entity is an agency or instrumentality of a foreign state under the FSIA. *See* 804 F.Supp. at 861 n. 1.

8. The court notes that plaintiff and defendants offer several pieces of evidence that might be inadmissible under the Federal Rules of Evidence for, among other reasons, improper authentication and lack of personal knowledge. However, for the most part, neither plaintiff nor defendants have objected to this evidence. Accordingly, except where a party has objected to evidence at issue, the court will consider the evidence in making its determination.

it is an agency or instrumentality of the Yugoslav state because of the economic structure in Yugoslavia. Investbanka's placement on the OFAC list is insufficient to overcome the other proof in the record that Investbanka is a joint stock company, not a socially-owned enterprise.

Procter & Gamble has also failed to establish that the Yugoslav state owns a majority interest in Investbanka in some way other than social-ownership. Procter & Gamble points out that as of December 31, 1996, Investbanka's shareholders included the Ministry of Transport, Electric Power Industry of Serbia, Yugoslav Airlines and Yugoslav Railways. Investbanka's shareholders as of December 31, 1996, however, are not relevant to a determination of Investbanka's ownership during 1992. Even if this court were to assume that these same entities were shareholders in 1992, Procter & Gamble has not offered any evidence that two of the entities, Electric Power Industry of Serbia and Yugoslav Railways, were government-owned. Procter & Gamble merely surmises that electric power and railway industries are traditionally government-owned. More importantly, Procter & Gamble has not offered any evidence as to what percentage of Investbanka these entities owned, but 28 U.S.C. § 1603(b)(2) requires majority ownership. Accordingly, the court finds Procter & Gamble has failed to establish that the Yugoslav state owned a majority interest in Investbanka.[9]

■ Procter & Gamble has also failed to establish that Investbanka was an organ of the Yugoslav state. The term "organ" is not defined in either the statute or relevant case law. After reviewing several decisions that focus on the organ prong of 28 U.S.C.

§ 1603(b)(2), the court finds "organ" can loosely be defined as an entity that either performs a government function or which is ultimately controlled by the state. *See Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect,* 89 F.3d 650, 655 (9th Cir.1996); *Gates,* 54 F.3d at 1460–61; *Intercontinental Dictionary Series v. De Gruyter,* 822 F.Supp. 662, 673 (C.D.Cal.1993); *Rios v. Marshall,* 530 F.Supp. 351, 371 (S.D.N.Y.1981); *Yessenin–Volpin v. Novosti Press Agency,* 443 F.Supp. 849, 852–54 (S.D.N.Y.1978); *Edlow Int'l Co. v. Nuklearna Elektrarna Krsko,* 441 F.Supp. 827, 832 (D.D.C.1977). Procter & Gamble has not established that Investbanka either performed a government function or that it was ultimately controlled by the state.

Procter & Gamble offers what appears to be an Investbanka annual report to support its assertion that three government officers sit on Investbanka's board of directors, which Procter & Gamble claims is persuasive evidence of Investbanka being an agent or instrumentality of the Yugoslav state. There are several problems with Procter & Gamble's evidence. First, the annual report is dated 1996, and the relevant period of inquiry is 1992. Second, Procter & Gamble relies on the report for its assertion that the Prime Minister of Serbia sits on the board. The report does not identify any of the named board members as the Prime Minister, however, and this court is not willing to assume that one of the named individuals is or was the Prime Minister.[10] Even if the court were to assume that Procter & Gamble's assertions are true, however, three individuals sitting on a fifteen-member board would not likely lead to the conclusion that the Yugoslav state exerted the ultimate control re-

---

9. Because Procter & Gamble has failed to establish that government-owned entities owned a majority of Investbanka, the court need not decide if the § 1603(b) requirement of majority state ownership can be satisfied where the state's ownership is through intermediary corporations. *Compare In re Air Crash Disaster,* 96 F.3d at 940–41 (finding majority state ownership could exist through state's ownership of intermediary) *with Gates,* 54 F.3d at 1462 (holding state must have direct ownership interest and that state's ownership of entity that owned majority of corporation in question was insufficient).

10. The court notes that the report does list Slobodan Milosevic as a member, and recognizes it is possible that Procter & Gamble confused the Prime Minister of Serbia with its President. Nevertheless, Procter & Gamble has not offered any evidence that the Milosevic named as a member of the board is the same Milosevic that is the President of Serbia, or that he occupied both positions in 1992.

quired to find Investbanka was an organ of the state.[11]

Procter & Gamble also asserts that Investbanka must be an agency or instrumentality of the Yugoslav state because a Yugoslav court must authorize Investbanka's business operations. However, Procter & Gamble has not offered any evidence that supports such a proposition. Procter & Gamble points to two separate decisions of the District Economic Court in Beograd that it claims authorize Investbanka business transactions. The first decision, issued February 26, 1991, merely registers the founding of Investbanka in accordance with Articles 183–85 of The Enterprises Reform Law, and Article 15 of The Law on Banks and Other Financial Organizations, both of which are a part of a larger Yugoslavian economic reform law. The second decision, issued May 19, 1995, merely confirms that Investbanka has complied with The Law on Banks and Other Financial Organizations. Neither of these decisions indicate that Investbanka must obtain the court's approval before it engages in business transactions.

The court finds that Procter & Gamble has not established either that the Yugoslav state owns a majority of Investbanka or that Investbanka is an organ of the state. Therefore, Procter & Gamble has failed to establish that Investbanka is a foreign state as defined in 28 U.S.C. § 1603, as required for this court to invoke subject matter jurisdiction under the FSIA.

### 3. The Progres Defendants

■ The April 1991 through May 1992 shipments of wood pulp into Yugoslavia are the underlying acts for purposes of determining the period of inquiry with respect to the Progres defendants' status as foreign states. See Gould, 853 F.2d at 450. It is undisputed that the Progres defendants were all organized under the laws of Yugoslavia, thus satisfying the requirement of 28 U.S.C. § 1603(b)(3). The parties agree that Progres and Viskoza–Loznica are separate legal entities, but dispute whether Progres–Viskoza is also a separate legal entity, as required by § 1603(b)(1). The parties also dispute whether the Progres defendants were organs of the Yugoslav state or a subdivision thereof, and whether a majority of the Progres defendants' shares or other ownership interest was owned by the Yugoslav state or a subdivision thereof, one of which is necessary to meet the definition of "agency or instrumentality of a foreign state" under 28 U.S.C. § 1603(b)(2).

### A. Progres–Viskoza

■ Procter & Gamble asserts that Progres–Viskoza is a distinct entity from Progres or Viskoza–Loznica, thus meeting the 28 U.S.C. § 1603(b)(1) requirement of a "separate legal person." In the alternative,

11. Procter & Gamble cites *McKesson Corp v. Islamic Republic of Iran*, No. 82–0220 TAF, 1993 U.S. Dist. Lexis 11792, at *33 (D.D.C. August 23, 1993), as holding that the appointment of the Prime Minister of Iran on the board of a foundation conclusively established that the foundation was an agency or instrumentality of Iran. It is true that the court considered the appointment of the Prime Minister to the board as a factor in its determination that the foundation was an organ. The court also noted, however, that there was significant other evidence to aid in that determination, such as: the establishment of the foundation by the Ayutullah Imam Khomeini; the foundation's ability to act in an investigative and prosecutorial role in the discovery and seizure of properties which the foundation then controlled and managed for the government; the foundation's power to call upon government agencies, including law enforcement and the courts, to aid in the confiscation; and the government's claim to the foundation's assets upon liquidation. *Id.*

at * 31–32. Procter & Gamble has not offered any evidence which indicates that Investbanka is under similar control. Accordingly, this court finds *McKesson* does not support a finding that the appointment of the Prime Minister of Serbia to Investbanka's board of directors conclusively establishes it as an organ of the state.

Investbanka relies on a related *McKesson* decision to assert that it cannot be an organ of the state absent Procter & Gamble's establishing a principal and agent relationship. *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 447–53 (D.C.Cir.1990). The D.C. Circuit established that in order to hold Iran liable for the acts of an instrumentality, an agency relationship needs to be shown. This is an entirely different inquiry, however, from determining whether an entity is an agency or instrumentality under 28 U.S.C. § 1603(b). *Id.* at 448; *Walter Fuller Aircraft Sales, Inc. v. Republic of the Philippines*, 965 F.2d 1375, 1381 (5th Cir. 1992).

Procter & Gamble argues that even if Progres–Viskoza is not a separate entity, it has held itself out as such and should therefore be amenable to suit. The Progres defendants claim that Progres–Viskoza is merely a subdivision of Progres without any independent legal status.

To date, most courts have interpreted the "separate legal person phrase of § 1603(b)(1) as requiring that the entity be legally separate from the foreign government, rather than any affiliated entity." *See, e.g., Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148, 151 (D.C.Cir.1994); *Bowers v. Transportes Navieros Ecuadorianos (Transnave),* 719 F.Supp. 166, 170 (S.D.N.Y. 1989).[12] Only one court seems to have touched on the issue in the case at bar. *See Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 398, 400 (E.D.Va.1984) (finding Argentine Naval Commission was only a department of the Argentine Navy and therefore not a separate person as required by 28 U.S.C. § 1603(b)(1)). Nevertheless, Congress has provided ample guidance to make this determination.

> The first criterion, that the entity be a separate legal person, is intended to include a corporation, association, foundation, or any other entity which, under the law of the foreign state where it was created, can sue or be sued in its own name, contract in its own name or hold property in its own name.

H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. (1976), *reprinted in,* 1976 U.S.C.C.A.N. 6604, 6614. Thus, the court must determine whether Procter & Gamble has carried its burden of showing that Progres–Viskoza "can sue or be sued in its own name, contract in its own name or hold property in its own name" under the laws of Yugoslavia.

As evidence, Procter & Gamble has submitted four pieces of correspondence which are all signed "Regards, Progres–Viskoza, [name of signer]." The court notes that a fifth piece of correspondence is signed "Regards Progres–Viskoza division."[13] On the other hand, defendants have submitted the Affidavits of Progres' Deputy General Manager and Legal Services Department Manager stating that Progres–Viskoza is not a legal entity under Yugoslav law. Defendants have also offered the Progres Self–Management Agreement which states that Progres–Viskoza ceased to exist as a separate legal entity in 1989, and that all contracts originally held in its name were transferred to and taken over by Progres.

The court finds that Procter & Gamble has failed to offer any evidence that under the laws of Yugoslavia Progres–Viskoza "can sue or be sued in its own name, contract in its own name or hold property in its own name." Even if this court were to look at all the evidence in a light most favorable to the plaintiff, which the court is not required to do, the mere existence of letterhead and promotional materials or correspondence signed on behalf of Progres–Viskoza does not establish that Progres–Viskoza is a separate legal entity under Yugoslavian law.

**12.** The issue often becomes important where a court has determined that an entity has met the second and third requirements of 28 U.S.C. § 1603(b) and is trying to determine whether service of process was proper. Requirements for proper service differ depending on whether the entity is categorized as an "agency or instrumentality" or as a "political subdivision." *See* 28 U.S.C. § 1608. These courts use the "separate legal person" test of § 1603(b) to make that determination. If the entity is separate from the government it is an agency or instrumentality over which the court has jurisdiction pursuant to § 1603(b), which leads to one set of requirements for service. If the entity is not separate from the government, the court still has subject matter jurisdiction pursuant to § 1603(a), which leads to a different set of service requirements. *See Hyatt Corp. v. Stanton,* 945 F.Supp. 675, 680–81 (S.D.N.Y.1996).

**13.** Procter & Gamble also alleges that Progres–Viskoza uses letterhead, business cards, and promotional materials bearing the Progres–Viskoza name. To support this, Procter & Gamble relies on a discovery request directed at Progres–Viskoza to produce a sample of any letterhead, business cards or promotional materials containing the name Progres–Viskoza. The Progres defendants objected on the ground that the production of such documents would be unduly burdensome. Procter & Gamble obtained an order compelling discovery on October 10, 1997, with which defendants complied by stating that no such documents exist. As Procter & Gamble has not objected, this court will take the Progres defendant's assertion as true.

This does not end the court's inquiry on this matter, however, as Procter & Gamble has also argued that even if Progres–Viskoza is not a separate legal entity, it has held itself out as such and should therefore be amenable to suit. Procter & Gamble has not cited any case, and this court has found none, where a court obtained subject matter jurisdiction over a party merely because it held itself out in some fashion. A premise of holding oneself out as a separate legal entity seems even more insufficient when the court is asked to invoke jurisdiction over an alleged agency or instrumentality of a foreign sovereign. The court need not rule on the issue, however, because the court finds that even if Progres–Viskoza's holding itself out as a separate legal entity could be sufficient to satisfy 28 U.S.C. § 1603(b)(1), Procter & Gamble has failed to offer any evidence that Progres–Viskoza held itself out to the public at large as a separate legal entity. The only evidence Procter & Gamble has produced is five pieces of correspondence signed in the name of Progres–Viskoza, one of which clearly delineates it as a division.[14] This evidence will not suffice. Thus, the court finds Procter & Gamble has failed to show Progres–Viskoza held itself out as a separate legal entity.

■ Therefore, because Procter & Gamble has failed to show that Progres–Viskoza is a separate legal person or that it held itself out as such, the court finds Progres–Viskoza does not satisfy the requirements of 28 U.S.C. § 1603. Accordingly, the court cannot invoke subject matter jurisdiction over Progres–Viskoza under the FSIA. For the same reasons, the court finds Procter &

Gamble has failed to show that Progres–Viskoza has the capacity to be sued as required by Rule 17(b) of the Federal Rules of Civil Procedure.[15] Thus, the court cannot simply invoke jurisdiction over this defendant by way of diversity. Accordingly, Progres–Viskoza's motion to dismiss is granted for lack of subject matter jurisdiction.[16]

### B. Progres

■ Procter & Gamble has offered the following facts which might establish that the Yugoslav state owns a majority interest in Progres, which would satisfy the requirements of 28 U.S.C. § 1603(b): (1) Progres' presence on the OFAC list; (2) Progres is a socially-owned entity and has no shareholders; (3) Progres was founded as a state-sponsored enterprise; (4) the funds for its operation came from its earlier operation as a state-sponsored enterprise.

Unlike Investbanka, Progres has conceded that it is and was a socially-owned company during the relevant time period. The court must therefore determine whether OFAC's second assumption, that the Yugoslav state owns a majority interest in all socially-owned companies, holds true. As supporting evidence, Procter & Gamble offers a copy of the Declaration of R. Richard Newcomb, the Director of OFAC, which was given in an unrelated case. Newcomb states that until 1989, Yugoslav companies were socially-owned, meaning they were managed by worker's councils. In 1989–90, a statute was enacted permitting the sale of shares in socially-owned entities. The statute, according to

14. While Procter & Gamble actively sought samples of letterhead or promotional materials bearing the Progres–Viskoza name through discovery to show that Progres–Viskoza held itself out as a separate entity, the court notes that Procter & Gamble has failed to produce such material. It seems disingenuous for Procter & Gamble to argue that Progres–Viskoza held itself out as a separate legal entity when Procter & Gamble has had a thirty-year business relationship with the Progres defendants and can not produce any samples on its own.

15. Rule 17(b) provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized."

Procter & Gamble asserts that even if Progres–Viskoza is only a division of Progres, a suit can

still be maintained against a division of a corporation. In support, plaintiff cites *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542 (4th Cir.1995), *rev'd on other grounds*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) and *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir.1979). In both those cases, however, the division was a separately *incorporated* division, which is inapposite to the case at bar. Furthermore, these cases do not focus on whether Progres–Viskoza has the capacity to be sued under Yugoslavian law.

16. This dismissal, of course, does not determine that Progres is not liable for the acts of Progres–Viskoza, its division.

Newcomb, appears to allow the sale of shares in these enterprises, with the proceeds being deposited into state established "development funds." Newcomb understands this requirement

> to indicate that the government, in receiving the proceeds of share sales, asserts its ownership over the totality of assets of socially-owned entities ... being "privatized." Thus [OFAC] believe[s] it is the government itself, and not the workers, that should be seen as the original owner of these businesses and their assets. Consequently, we concluded that any firm not yet privatized is, by definition, controlled by the government, since it operates with government-owned assets.

It is undisputed that Progress has no shareholders because it has not privatized, and that it remains a socially-owned entity. According to Newcomb, then, the Yugoslav state owns a majority interest in Progres.

Several other courts have examined similar evidence in making a determination whether a socially-owned company in Yugoslavia qualifies as a state agency for purposes of the FSIA. In *A.D. Belgrade* the court relied on a single affidavit to find the defendant had offered sufficient evidence that the Yugoslav state held equitable ownership of socially-owned entities. 2 F.Supp.2d at 415. In *Milena* the court agreed with OFAC's determination "that the current system is Yugoslavia, in particular the concept of 'social capital,' gives rise to a residual government claim to the majority of a Yugoslav enterprise's capital." 804 F.Supp. at 863. On the other hand, in *Edlow* the court found that a "foreign state's system of property ownership [should not], without more, ... be determinative on the question whether an entity operating within the state is a state agency or instrumentality under the [FSIA]." 441 F.Supp. at 832. To the extent *Edlow* requires more than state ownership of an entity, it is inconsistent with the language of the FSIA. Where a party can show, as Procter & Gamble has shown in the case at bar, that a state, through its system of property ownership, owns a majority interest in the property

of an entity, the language of the FSIA is satisfied. Accordingly, the court finds Procter & Gamble has established that the Yugoslav state owns a majority interest in Progres, thus satisfying the requirements of the FSIA and allowing this court to invoke jurisdiction under the FSIA.[17]

### C. *Viskoza–Loznica*

Procter & Gamble alleges that the following facts establish that Viskoza–Loznica is an agency or instrumentality of the Yugoslav state within the meaning of 28 U.S.C. § 1603(b): (1) its presence on the OFAC list; (2) it is charged with functions of national importance, including environmental protection, fire protection, and work safety; (3) four of the nine decision-making members of the Managing Board are appointed at the proposal of the Government; (4) a state body may stop the execution of any decision of Viskoza–Loznica; (5) Viskoza–Loznica may discover and seize private property; and (6) the Associate General Manager of Viskoza–Loznica stated that the Yugoslav government would pay Viskoza–Loznica's debt to the plaintiff.

█ Items two through six on Procter & Gamble's list might tend to establish that Viskoza–Loznica is an organ of the Yugoslav state. Only the first item on Procter & Gamble's list can be construed as establishing that the Yugoslav state owns a majority interest in Viskoza–Loznica as required by § 1603(b). As thoroughly discussed above, OFAC presumes that all entities located within Yugoslavia are socially-owned, and that social-ownership provides the state with a large residual ownership interest in an entity. The court must therefore first determine if Viskoza–Loznica is a socially-owned entity.

While Procter & Gamble asserts that Viskoza–Loznica is a socially-owned entity, it has offered no evidence to support its assertion. On the other hand, a decision of The Economic Court in Valjevo indicates that as of December 31, 1994, Viskoza–Loznica reorganized into a holding company of mixed-

---

17. Accordingly, the court need not consider whether Progres qualifies as an organ of the Yugoslav state, as is alternatively required by 28 U.S.C. § 1603(b).

ownership comprised of several joint-stock companies and that prior to that date Viskoza–Loznica was a joint-stock company of mixed ownership. This information is supported by the Affidavit of Pavlovic Mile, Viskoza–Loznica's director. Mixed-ownership entities are distinct from socially-owned entities under Yugoslav law.[18] Accordingly, for purposes of this motion Viskoza–Loznica will be deemed a mixed-ownership company.

The court has no way of determining if OFAC's findings on the economic system in Yugoslavia would hold true if OFAC were faced with a mixed-ownership company, and neither party has addressed the issue. Since the burden is on Procter & Gamble to establish subject matter jurisdiction, the court finds it has failed to show that the Yugoslav state had a majority interest in Viskoza–Loznica during 1992.

Procter & Gamble also contends that Viskoza–Loznica was an organ of the Yugoslav state. As discussed above, the term "organ," in this context, can loosely be defined as an entity that either performs a government function or which is ultimately controlled by the state. With this definition in mind, the court will examine Procter & Gamble's remaining five contentions. Procter & Gamble's second and third contentions are based on a "statute,"[19] which was not implemented until January 1, 1995, well outside the period of inquiry, and are therefore irrelevant. Procter & Gamble's fourth contention is based on Viskoza–Loznica's characterization under Yugoslavian law as a socially-owned company and does not seem to hold true under Yugoslavian law governing mixed-ownership enterprises. Procter & Gamble has offered no evidence to support its fifth contention, which is that Viskoza–Loznica may discover and seize property.[20] The court finds Procter & Gamble's sixth contention, which is that a representative of Viskoza–Loznica told plaintiff that the state would pay Viskoza–Loznica's debt, is insufficient to support a finding that Viskoza–Loznica either performed a government function or that it was ultimately controlled by the state.

Procter & Gamble also argues that since the court has subject matter jurisdiction over Progres under the FSIA, it should also have jurisdiction under that statute over Viskoza–Loznica because of its relationship with Progres. Procter & Gamble alleges that Progres is a government-owned purchasing agent, responsible for paying all of Viskoza–Loznica debts, and relies on the Affidavit of Procter & Gamble's vice president in support. The court finds, however, that even if Procter & Gamble's allegation is true, it does not show that Viskoza–Loznica is owned by the state or that it is an organ thereof.

Accordingly, the court finds it does not have subject matter jurisdiction over Viskoza–Loznica under the FSIA, and that jurisdiction must be invoked based solely on diversity.

---

**18.** Some of the major differences can be gleaned from a reading of the Yugoslav Law on Enterprises. Under Article 3 a socially-owned enterprise is managed by the workers of that enterprise, who under Article 6 may also be the founders of the enterprise. Under Article 3, a mixed-ownership enterprise "shall be managed by the workers of socially-owned enterprise which has invested assets in it, proportionally to the amount of invested assets, by workers of such mixed ownership enterprise in accordance with the contract on foundation and by the owners of the assets, proportionally to the amount of the assets invested." Under Article 58, a mixed ownership enterprise may be established by a private person, and under Article 62 a joint-stock company procures assets for its foundation through the issuance of shares. There do not appear to be any restrictions on who may purchase shares.

**19.** The "statute" seems to be the equivalent of a U.S. corporation's by-laws or Articles of Incorporation.

**20.** In response to an interrogatory asking the Progres defendants to describe the methods by which they may seize property, the defendants replied they may only do so in accordance with Yugoslav law. In response to a Discovery Order, defendants supplemented this answer detailing how they may attach an adversary's property in connection with the filing of a lawsuit. Procter & Gamble asks this court to find that this was an evasive answer and to infer that in a full response the Progres defendants would have revealed the power to discover and seize property. Procter & Gamble has produced no evidence, however, from which the court might make such an inference. Merely asking a question and receiving an answer that does not fulfill a party's hopes is not a basis for holding the answer incomplete or evasive.

### B. Personal Jurisdiction [21]

As determined above, this court has subject matter jurisdiction over Progres under the FSIA. The court has subject matter jurisdiction over Investbanka and Viskoza–Loznica under the diversity statute.

A federal court obtains personal jurisdiction over a defendant under the FSIA when the plaintiff serves process in accordance with 28 U.S.C. § 1608. 28 U.S.C. § 1330(b). Section 1608(b)(3)(B) provides that service may be made "by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state ... by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served." There is no dispute, at least with respect to Progres, that Procter & Gamble complied with this provision. Accordingly, the court finds it has personal jurisdiction over Progres, and its motion to dismiss brought under Rule 12(b)(2) is denied.

■ A federal court sitting in diversity is bound to follow the personal jurisdiction laws of the state in which it sits and thus can maintain jurisdiction over an out-of-state defendant only in accordance with the state's long-arm statute and the limitations of the due process clause. *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994).

■ The Tennessee long-arm statute, Tenn.Code Ann. § 20–2–214, has been interpreted as being co-extensive with the limits of the due process clause. *Payne v. Motorists' Mutual Ins. Cos.*, 4 F.3d 452, 455 (6th Cir.1993); *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn.1985). Therefore, the only constraints on a Tennessee court's exercise of personal jurisdiction over Investbanka

and Viskoza–Loznica are those imposed by the due process clause of the Constitution.

■ A court may exercise both general and specific jurisdiction under the Due Process Clause. *Aristech Chem. Int'l v. Acrylic Fabricators Ltd.* 138 F.3d 624, 627 (6th Cir. 1998). A court has general jurisdiction over a defendant who "has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Id.* (internal quotations and citation omitted). Specific jurisdiction exists for "claims that arise out of or relate to a defendant's contacts with the forum." *Id.* (internal quotations and citation omitted).

■ In *Southern Mach. Co., Inc. v. Mohasco Indus., Inc.*, the Sixth Circuit analyzed several Supreme Court cases and established a three-part test for determining when specific personal jurisdiction is proper under the Due Process Clause:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d at 381.[22]

The first element of *Mohasco* is the "purposeful availment" or "causing a consequence" requirement. The Supreme Court has further refined "purposeful availment" by stating that "a defendant must 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thusi'nvoking the benefits and protections of its

---

**21.** Procter & Gamble argues that the Progres defendants did not argue lack of minimum contacts in their initial motion to dismiss, and that they therefore waived this argument. The court, however, finds ample evidence of the defendants having raised this argument in their initial motion.

**22.** In *Masada*, the Tennessee Supreme Court suggested that the three-part test of *Mohasco* was "too restrictive," and proposed a new five-part

test for determining the outer limits of personal jurisdiction under the Tennessee long-arm statute. 697 S.W.2d at 334–35. The Sixth Circuit has not adopted this new test, however, and has continued to apply the *Mohasco* three-part test. See *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir.1997); *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089–90 (6th Cir.1989).

laws.'" *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir.1997) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). To fulfill this requirement, "the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Supreme Court has also emphasized, with respect to a defendant's having caused consequences in a state, that "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473, 105 S.Ct. 2174.

The Sixth Circuit has interpreted the third part of the *Mohasco* three-part test as corresponding with the Supreme Court's requirement that the exercise of personal jurisdiction "comport with 'traditional notions of fair play and substantial justice.'" *Reynolds*, 23 F.3d at 1117 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). In making this determination, a court should consider:

> the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi Metal*, 480 U.S. at 113, 107 S.Ct. 1026 (citing *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559). Where, as in the case at bar, the defendants are non-resident aliens, the court must also consider the "unique burdens placed upon one who must defend oneself in a foreign legal system." *Id.* at 114, 107 S.Ct. 1026.

 Because the defense of personal jurisdiction is a personal right, a defendant may waive the defense or be estopped from asserting it because of actions which amount to submission to a court's jurisdiction. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–05, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

 In reviewing a Rule 12(b)(2) motion for lack of personal jurisdiction, the burden of establishing jurisdiction is on the plaintiff. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980). However, where a defendant challenges a court's personal jurisdiction under Rule 12(b)(2) the court views "the facts in the light most favorable to the plaintiff, and do[es] not consider facts proffered by the defendant that conflict with those offered by the plaintiff" if the court relies on the parties filings and does not hold an evidentiary hearing. *Aristech*, 138 F.3d at 626. Once a plaintiff establishes a prima facie case of personal jurisdiction, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. *See WEDGE*, 882 F.2d at 1090.

With this framework in mind, the court now turns its attention to the two remaining defendants.

### 1. *Investbanka*

 Procter & Gamble does not argue that Investbanka's business activity subjects it to the personal jurisdiction of this court. Indeed, there is nothing in the record to indicate Investbanka purposefully availed itself of the privileges of doing business in Tennessee, and the "mere issuance of a letter of credit naming a resident of a particular state as beneficiary does not subject the issuing bank to the jurisdiction of that state." *Chandler v. Barclays Bank PLC*, 898 F.2d 1148, 1151 (6th Cir.1990) (interpreting Michigan long-arm statute which is also co-extensive with the limits of due process). Accordingly, this court finds Investbanka's business activities are insufficient to provide this court with personal jurisdiction.

Instead, Procter & Gamble argues that Investbanka has waived the defense of personal jurisdiction. Investbanka filed an amended answer to Procter & Gamble's complaint on August 2, 1995, which included cross-claims against the Progres defendants and a third-party complaint against Bankers Trust for failure to pay one of the letters of credit to Procter & Gamble before imposition

of the Yugoslav sanctions on May 29, 1992. Procter & Gamble asserts that Investbanka waived any defense of personal jurisdiction once it filed those claims.

 Rule 12(b) of the Federal Rules of Civil Procedure provides, in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required .... No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.

If one equates Investbanka's cross-claims or third-party complaint with "other defenses or objections," Rule 12(b) would appear to allow Investbanka to retain the defense of lack of personal jurisdiction even after filing its cross-claims and third-party complaint. Procter & Gamble, however, correctly notes that several courts have found the opposite to be true. *See North Branch Prod., Inc. v. Fisher,* 284 F.2d 611, 615 (C.A.D.C.1960); *Switzer Bros., Inc. v. Chicago Cardboard Co.,* 252 F.2d 407, 411 (7th Cir.1958) (applying same logic to reservation of defense of improper venue); *Kincade v. Jeffery–De Witt Insulator Corp.,* 242 F.2d 328, 332 (5th Cir. 1957). Upon closer review it is apparent that these courts have rethought these decisions, and that the majority now holds the filing of a cross-claim or third-party claim in the same pleading in which the defendant asserts a defense of lack of personal jurisdiction does not waive the jurisdictional defense. *Bayou Steel Corp. v. M/V Amstelvoorn,* 809 F.2d 1147, 1148–49 (5th Cir.1987); *Chase v. Pan-Pacific Broadcasting, Inc.,* 750 F.2d 131, 133–34 (D.C.Cir.1984); *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330 n. 1 (9th Cir.1984); *Neifeld v. Steinberg,* 438 F.2d 423, 426–31 (3d Cir.1971); *Knapp–Monarch Co. v. Dominion Elec. Corp.,* 365 F.2d 175, 177 (7th Cir.1966) (applying same logic to reservation of defense of improper venue); *Lomanco, Inc. v. Missouri Pacific R.R. Co.,* 566 F.Supp. 846, 849–51 (E.D.Ark.1983). The court concurs with holdings of the majority, and holds that Investbanka's filing of a cross-

claim and third-party complaint in its answer does not waive its defense of lack of personal jurisdiction.

Having found Investbanka has not purposefully availed itself of the privileges of doing business in Tennessee and that it has not waived the defense of personal jurisdiction, this court finds it does not possess personal jurisdiction over Investbanka and that its motion to dismiss brought under Rule 12(b)(2) must be granted.

### 2. *Viskoza–Loznica*

 It is undisputed that Procter & Gamble has supplied over 200,000 tons of wood pulp to the Progres defendants over the past thirty years. Procter & Gamble alleges that Progres and Progres–Viskoza were government-owned purchasing agents responsible for placing orders and remitting payment and that Viskoza–Loznica was the ultimate user of the wood pulp. While the Progres defendants dispute whether Progres and Progres–Viskoza are government owned, they do not dispute that they were purchasing agents for Viskoza–Loznica. Accordingly, the activity of Progres and Progres–Viskoza in placing orders for Viskoza–Loznica and remitting payment will be attributed to Viskoza–Loznica.

 According to Procter & Gamble, it shipped the wood pulp to Yugoslavia and sent invoices to the defendants with plaintiff's Memphis address on them. All of the wood pulp was made to the Progres defendants' unique physical and chemical specifications. Procter & Gamble further alleges that the Progres defendants would remit payment directly to plaintiff in Tennessee by means of letter of credit. Over the course of their relationship, Procter & Gamble alleges that it engaged in significant correspondence with all the Progres defendants, including Viskoza–Loznica, through the Tennessee office. On at least one occasion, representatives of Viskoza–Loznica visited Procter & Gamble offices in Memphis regarding the wood pulp business.

The court finds this activity is sufficient to find Viskoza–Loznica caused a consequence in Tennessee and that the cause of action

arose out of Viskoza–Loznica's having caused that consequence, thus satisfying the first two elements of *Mohasco*. Viskoza–Loznica has "reached out" and created "continuing relationships and obligations" with Procter & Gamble, which subjects it to the laws of Tennessee for the consequences of its actions. *See Burger King*, 471 U.S. at 473, 105 S.Ct. 2174.

Further support for finding Viskoza–Loznica's activities meet the first two elements of *Mohasco* can be found in rulings of the Sixth Circuit. In *Mohasco*, the court stated that "business is transacted in a state when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state; and the defendant has purposefully availed himself of the opportunity of acting there if he should have reasonably foreseen that the transaction would have consequences in that state." 401 F.2d at 382–83. The court finds Viskoza–Loznica should have reasonably foreseen that placing orders through its purchasing agents for wood pulp it knew was to be manufactured and exported from Tennessee would have economic consequences in Tennessee. *See also Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998) (holding defendant purposefully availed himself of privileges of Ohio by transacting business in Ohio through negotiating and executing a contract via telephone calls and letters to an Ohio resident and creating a continuing obligation in Ohio; and holding cause of action arose from breach of that contract).

The Sixth Circuit has applied the same standards when faced with a foreign corporation's activities in a forum state. In *Aristech*, a Kentucky seller of acrylic sued a Canadian buyer in state court for breach of contract. 138 F.3d at 626–27. The Canadian buyer had made at least fourteen previous purchases from the Kentucky corporation, and the parties entered into a contract calling for several future sales of customized acrylic. The Canadian buyer allegedly breached the contract in refusing to make purchases as outlined in the contract. *Id.* In finding that the first two elements of specific jurisdiction existed, the Sixth Circuit noted that the acrylic was specially manufactured,

that the defendant had placed a substantial order, and that both parties envisioned a relationship that would span several years. *Id.* at 627. The facts are even more compelling here, where the wood pulp is made to customer specifications, Procter & Gamble has shipped over 200,000 tons of it to Yugoslavia, and the parties have already had a relationship spanning three decades. Therefore, the court finds that Procter & Gamble has made a prima facie showing that the first two elements of *Mohasco* are satisfied.

A plaintiff can make a prima facie showing that a court's exercise of jurisdiction over a defendant is reasonable if the plaintiff can show the state has an interest in resolving the conflict at issue. *WEDGE*, 882 F.2d at 1092. "A state has a significant interest in resolving a suit when 'a contract calling for substantial production of goods is entered into, with the production of goods ... to take place entirely within the forum state.'" *Aristech*, 138 F.3d at 629 (citation omitted). Procter & Gamble's agreement with the Progres defendants involved the production of a substantial amount of wood pulp to take place entirely within Tennessee. Accordingly, the court finds Procter & Gamble has made a prima facie showing of the third element of *Mohasco,* and that since Procter & Gamble has established its prima facie case, the burden falls to Viskoza–Loznica to show that the court's exercise of jurisdiction would be unreasonable.

Because the defendant in *Aristech* was a foreign corporation, the court paid significant attention to *Mohasco's* requirement that the exercise of jurisdiction be reasonable. *Id.* at 628–29. It is true that Viskoza–Loznica is based in Yugoslavia and that defending this suit might place special burdens on Viskoza–Loznica which the court would weigh against other interests, such as Tennessee's interests and the interest of Procter & Gamble in obtaining relief. Viskoza–Loznica has not argued, however, that this court's exercise of personal jurisdiction would place a burden upon it, and there is little evidence on which the court might make such a determination. Therefore, the court finds Viskoza–Loznica has failed to meet its burden of showing that this court's exercise of personal jurisdiction

would be unreasonable. Accordingly, the court finds it has personal jurisdiction over Viskoza–Loznica, and its motion to dismiss brought under Rule 12(b)(2) is denied.

### C. Service of Process

 Both Investbanka and the Progres defendants have brought motions to dismiss under Rule 12(b)(4) and (5) for insufficiency of process and insufficiency of service of process. No defendant has objected to the form of process, however, and the court therefore dismisses all of the defendants' Rule 12(b)(4) motions to dismiss.[23] The court will address, however, the defendants' claims that they were not properly served with process.

As noted above, it is undisputed, at least with respect to Progres, that Procter & Gamble complied with the service provisions of the FSIA in its original service of process in 1995. The court has also found that its jurisdiction over Progres is based on the FSIA. Accordingly, the court denies Progres' motion to dismiss for insufficient service of process brought under Rule 12(b)(5).

Investbanka and Viskoza–Loznica argue that while service on them may have been proper under the FSIA, this court's jurisdiction over these defendants rests in diversity, and that service of process must comply with Rule 4(f) of the Federal Rules of Civil Procedure. Investbanka and Viskoza–Loznica argue Rule 4(f) was not complied with, and that their motions to dismiss brought under Rule 12(b)(5) must be granted.

Rule 4(f)[24] of the Federal Rules of Civil Procedure provides:

*Service Upon Individuals in a Foreign Country.* Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incom-

petent person, may be effected in a place not within any judicial district of the United States:

(1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or

(2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

(A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or

(B) as directed by the foreign authority in response to a letter rogatory or letter of request; or

(C) unless prohibited by the law of the foreign country, by

(i) delivery to the individual personally of a copy of the summons and the complaint; or

(ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or

(3) by other means not prohibited by international agreement as may be directed by the court.

It is undisputed that Yugoslavia is not a party to any international convention such as the Hague, and that this court has not directed a special method for service. Thus, Rule 4(f)(1) and (3) are inapplicable, and service must comply with Rule 4(f)(2).

Procter & Gamble contends that service that is proper under 28 U.S.C. § 1608(b)(3)(B) must also be proper under Rule 4(f)(2)(C)(ii), because the requirements

---

**23.** An objection under Rule 12(b)(4) concerns the form of process rather than the manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) [now Rule 4(a)] .... A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint.

**5A** Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (2d ed.1990).

**24.** Under Rule 4(h) of the Federal Rules of Civil Procedure, service on a foreign corporation which is outside all U.S. judicial districts must be made in the manner prescribed for service on foreign individuals under Rule 4(f).

of Rule 4(f)(2)(C)(ii) are almost identical to those of 28 U.S.C. § 1608(b)(3)(B). Rule 4(f)(2)(C) clearly states, however, that Rule 4(f)(2)(C)(ii) may not be used if it is prohibited by the law of the foreign country.

■ Viskoza–Loznica and Investbanka have produced the Affidavit of Maja Stanivukovic, a Professor of Private International Law at the University of Novi Sad School of Law in Yugoslavia, which states:

> Service of process effected by foreign court by mail is improper under the law of Yugoslavia and under customery [sic] international law. The Yugoslav Civil Procedure Act of 1976 ... requires that the personal service be made by the authorized court having jurisdiction over the defendant in Yugoslavia. Foreign court has no direct power to effect service of process upon a Yugoslav defendant and may only do so by formally applying for judicial assistance of the Yugoslav court.

Procter & Gamble has not offered any evidence disputing these requirements for proper service under Yugoslav law. Instead, Procter & Gamble relies on *Concepcion v. VEB Backereimaschenbau*, 120 F.R.D. 482 (D.N.J.1988), which held that proper service under 28 U.S.C. § 1608(b)(3)(B) satisfied the requirements of the predecessor of Rule 4(f)(2)(C)(ii). The predecessor of Rule 4(f)(2)(C)(ii) did not contain the restriction that such service could not be prohibited by foreign law, however, and there was no showing in that case that foreign law prohibited such service. Thus, *Concepcion* bears no weight upon the present issue. Accordingly, the court finds Procter & Gamble's service under 28 U.S.C. § 1608(b)(3)(B) will not satisfy the requirements of Rule 4(f)(2)(C)(ii) where foreign law is prohibitive. See *Gràval v. P.T. Bakrie & Bros.*, 986 F.Supp. 1326, 1329 (C.D.Cal.1996) (finding service invalid under Rule 4(f)(2)(C)(ii) where Indonesian law prohibited it). Therefore, the court finds Procter & Gamble's original service of process to Investbanka and Viskoza–Loznica was insufficient.

■ In apparent recognition of this problem, Procter & Gamble attempted to effect service through Rule 4(f)(2)(B) by asking this court to issue letters rogatory to the defendants. The court issued letters rogatory requesting the assistance of the appropriate judicial authority in Yugoslavia in serving process upon the defendants on April 21, 1997.[25] Rule 4(f)(2)(B) requires more than the mere issuance of the letters rogatory, however. It requires that service be made "as directed by the foreign authority in response to a letter rogatory." While the Progres defendants concede that on July 3, 1997, they received service from the appropriate Yugoslav authorities,[26] there is no rec-

**25.** Time limits for service of process do not apply to service in a foreign country. Rule 4(m).

**26.** Procter & Gamble has moved to strike the Progres defendants' Renewed Motion to Dismiss the Complaint or for Summary Judgment in which they make this concession. Procter & Gamble's motion is not well taken. First, it must be noted that the "renewed motion to dismiss or for summary judgment" does not ask for summary judgment, and the caption appears to be a typographical error. Accordingly the court will treat it as a motion to dismiss: The renewed motion, in addition to reiterating much of the Progres defendants' prior arguments, essentially raises a Rule 12(b)(6) motion because it alleges that receipt of process in July of 1997 is outside the statute of limitations. Rule 12(g) states, in part, that "[i]f a party makes a motion under this rule but omits therefrom any defense or objection *then available* to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted." (emphasis added). The Progres defendants' objection stems from the receipt of process in July of 1997, and was not available at the time of their original response. The court is not aware of any other Rule which would preclude the filing of this motion, and Procter & Gamble's motion to strike the Progres defendants' renewed motion is denied.

Procter & Gamble has also moved to strike Investbanka's Renewed Motion to Dismiss Complaint or for Summary Judgment, and it is well taken. On July 10, 1997, Investbanka filed a Motion to Dismiss or for Summary Judgment. Procter & Gamble responded on August 20, 1997, and Investbanka filed a reply brief on September 3, 1997. Investbanka's Renewed Motion was filed on August 27, 1997, and is supposedly in response to a supplemental brief Procter & Gamble filed on July 14, 1997. The July 14 Procter & Gamble brief was filed pursuant to a January 16, 1997 order of this court allowing Procter & Gamble to file a supplemental brief after completing discovery of the Progres defendants. The Progres defendants replied to the July 14 brief on August 7, 1997. The July 14 brief does not directly address Investbanka's motion to dismiss, although it does address areas of

ord before the court of a reply to the letters rogatory in that the Yugoslav court either served Investbanka directly or offered directions on how such service should be accomplished. Accordingly, the court finds Procter & Gamble properly served Viskoza–Loznica under Rule 4(f)(2)(B), but has failed to establish that service was properly made on Investbanka under that Rule. Therefore, the court finds Procter & Gamble has failed to adequately serve process on Investbanka, and Investbanka's motion to dismiss brought under Rule 12(b)(5) is granted.

While Viskoza–Loznica concedes that it received service in July of 1997, it contends that such receipt brings Procter & Gamble's action outside the applicable statute of limitations. Whether this court has jurisdiction based on the FSIA or diversity, the Tennessee statute of limitations will apply. *See Walker v. Armco Steel Co.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C.Cir.1995). Tennessee Code Annotated § 47–2–725 provides:

> (1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued....
>
> (2) A cause of action accrues when the breach occurs ....

"When the application of state tolling and service of process provisions would affect the running of the statute of limitations and thus affect the outcome of the lawsuit in state court, a federal court in a diversity action should apply those same state rules of decision in determining whether an action is barred by the applicable state statute of limitations." *Ringrose v. Engelberg Huller Co., Inc.*, 692 F.2d 403, 405 (6th Cir.1982) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980)). *See*

*also Eades v. Clark Distrib. Co.*, 70 F.3d 441, 442–43 (6th Cir.1995) (finding *Walker* is still valid after amendments to the Federal Rules of Civil Procedure and that state law governs the commencement of actions for statute of limitations purposes). Accordingly the court must determine when the action commenced under the Tennessee Rules of Civil Procedure.[27]

Tennessee Rule of Civil Procedure 3 defines commencement of an action for purposes of the statute of limitations as follows:

> An action is commenced within the meaning of any statute of limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 30 days or is not served within 30 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

It is unclear from the record exactly when payment for the wood pulp was due, but Procter & Gamble's complaint implies payment was due May 30, 1992, as it asks for interest from that date. In their Renewed Motion, the Progres defendants assert that the proper date is August of 1992. As the following discussion will show, which date this court chooses is irrelevant, but for the sake of clarity the court will use the August 1992 date.

Under Tenn.Code Ann. § 47–2–725, Procter & Gamble must commence its action against the defendants by August of 1996. Procter & Gamble commenced the action within the meaning of the Tennessee Rule of

---

mutual concern to all defendants. Nevertheless, Investbanka had ample opportunity to respond by way of its August 20 filing to any arguments Procter & Gamble raised in its July 14 brief. In the interest of judicial economy, Investbanka's August 27 filing will not be considered by the court, and Procter & Gamble's motion to strike it is granted.

27. If the Federal Rules of Civil Procedure applied for purposes of determining when the action commenced, Rule 3 would dictate that the action commenced upon the filing of the complaint. *United States v. Wahl*, 583 F.2d 285, 287–88 (6th Cir.1978). Accordingly, under the federal rules, Procter & Gamble's filing of the complaint would be sufficient to toll the Tennessee statute of limitations.

Civil Procedure by filing its complaint in April of 1995. Under that Tennessee Rule of Civil Procedure, however, the failure to serve process precludes the filing of the complaint from tolling the statute of limitations. Procter & Gamble's service by letters rogatory did not occur within one year of the filing of the complaint, as required by the Rule to toll the statute. Thus, if service by the letters rogatory were the only service, the statute would begin to run in August of 1992 and the subsequent service by the letters rogatory in July of 1997 would be outside the limitations period.

■ However, Procter & Gamble did serve process on Viskoza–Loznica with its original complaint, even though this court has determined that service to have been insufficient as it was prohibited by Yugoslav law. The question then becomes whether this insufficient service of process is enough to toll the statute of limitations. In *First Tenn. Bank v. Dougherty*, 963 S.W.2d 507, 508 (Tenn.Ct.App.1997), the court did not even address whether five summonses that were improperly served could toll the statute, when it found that a sixth attempt at service did not because the process was not returned within 30 days. This court reads *Dougherty* as finding that insufficient service of process will not suffice to toll the statute of limitations, and this court has no reason to believe the Tennessee Supreme Court would hold otherwise. Therefore, Procter & Gamble's service on Viskoza–Loznica by letter rogatory came too late to toll the statute of limitations under Tennessee law.

Accordingly, the court finds both the original and second service of process were insufficient with respect to Investbanka and its motion to dismiss brought under Rule 12(b)(5) is granted. Although the court finds Procter & Gamble's service by letter rogatory on Viskoza–Loznica was proper, such service brings Procter & Gamble's action outside the Tennessee statute of limitations. Viskoza–Loznica's motion to dismiss brought under Rule 12(b)(6) is therefore granted, and its motion to dismiss brought under Rule 12(b)(5) is denied. Progres' motion to dismiss under Rule 12(b)(6) is denied as being moot.

*IV. Conclusion*

The court finds it has subject matter jurisdiction over Investbanka based on diversity, but that it does not have personal jurisdiction. The court also finds service of process on Investbanka was insufficient. Accordingly, Procter & Gamble's claim against Investbanka is dismissed without prejudice. Investbanka's motion for summary judgment is denied as moot.

The court finds Procter & Gamble has failed to establish that Progres–Viskoza is a separate legal entity, and Procter & Gamble's claim against Progres–Viskoza is therefore dismissed.

The court finds it has subject matter jurisdiction over Progres under the FSIA, and that service of process was proper under the FSIA. The court also finds it has personal jurisdiction over Progres under the FSIA. Accordingly, Progres' motion to dismiss is denied.

The court finds it has subject matter jurisdiction over Viskoza–Loznica based on diversity, and that it has personal jurisdiction over the defendant. The court also finds that while Procter & Gamble's original service of process was insufficient, its second service of process on Viskoza–Loznica by letter rogatory was sufficient. However, the service of process by letter rogatory is insufficient under the applicable statute of limitations. Accordingly, Procter & Gamble's claim against Viskoza–Loznica is dismissed with prejudice.

The court finds Procter & Gamble's motion to strike the renewed motion of Investbanka is granted, but Procter & Gamble's motion to strike the renewed motion of the Progres defendants is denied.